**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**URBANA DIVISION**

| | |
|---|---|
| ADAM DAUGHERTY, Individually and for Others Similarly Situated,<br><br>        Plaintiff,<br><br>v.<br><br>UTILITY RESOURCE GROUP, LLC,<br><br>        Defendant. | Case No. _____<br><br>Jury Trial Demanded |

## ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.     Adam Daugherty ("Daugherty") brings this class and collective action to recover unpaid wages and other damages from Utility Resource Group, LLC ("URG").

2.     URG employed Daugherty as one of its Hourly Utility Locators (defined below) in Illinois and Kentucky.

3.     Daugherty and the other Hourly Utility Locators regularly work more than 40 hours in a workweek.

4.     But URG does not pay Daugherty and its other Hourly Utility Locators for all the hours they work.

5.     Instead, URG requires Daugherty and the other Hourly Utility Locators to work significant time "off the clock" without pay.

6.     Specifically, URG prohibits Daugherty and the other Hourly Utility Locators from clocking in for their shifts until they arrive at their first assigned ticket; and URG requires Daugherty and the other Hourly Utility Locators to clock out for their shifts when they leave their last assigned ticket (URG's "ticket to ticket policy").

1

7.      But to meet URG's strict productivity requirements, Daugherty and the other Hourly Utility Locators are forced to perform their regular utility locating duties "off the clock" before arriving to their first assigned ticket and after leaving their last assigned ticket.

8.      Daugherty and the other Hourly Utility Locators are thus not paid for the time they spend performing this pre- and post-ticket work "off the clock."

9.      URG's uniform "ticket to ticket" policy violates the Fair Labor Standards Act ("FLSA"), the Illinois Minimum Wage Law ("IMWL"), and the Kentucky Wage and Hour Act ("KWHA") by depriving Daugherty and the other Hourly Utility Locators of overtime wages for all overtime hours worked.

10.     Likewise, URG's uniform "ticket to ticket" policy violates the Illinois Wage Payment and Collection Act ("IWPCA") by depriving Daugherty and the other Hourly Utility Locators of earned wages (at their agreed hourly rates) for all hours worked.

11.     In addition to depriving Daugherty and the other Hourly Utility Locators of pay for time worked "off the clock" before their first ticket and after their last ticket, URG also requires these workers to clock out for 30 minutes a day for so-called "meal breaks" (URG's "meal break policy").

12.     URG therefore does not pay Daugherty and its other Hourly Utility Locators for that time.

13.     But Daugherty and the other Hourly Utility Locators do not actually receive *bona fide* meal breaks.

14.     Instead, to meet URG's strict productivity requirements, Daugherty and the other Hourly Utility Locators are forced to perform their regular utility locating duties "off the clock" during their unpaid "meal breaks" for URG's predominant benefit.

15.     URG's uniform meal break policy therefore violates the FLSA, IMWL, and KWHA by depriving Daugherty and the other Hourly Utility Locators of overtime wages for all overtime

hours worked.

16.    Likewise, URG's uniform meal break policy violates the IWPCA by depriving Daugherty and the other Hourly Utility Locators of earned wages (at their agreed hourly rates) for all hours worked.

### JURISDICTION & VENUE

17.    This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA, 29 U.S.C. § 216(b).

18.    This Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

19.    This Court has specific personal jurisdiction over URG based on URG's substantial contacts with, and conduct directed towards, Illinois that form the basis of this action.

20.    Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

21.    Specifically, URG employed Daugherty primarily in and around Champaign, Illinois, which is in this District and Division

### PARTIES

22.    Daugherty worked for URG as a Utility Locator in Illinois, Indiana, Kentucky, and Georgia from approximately January 2018 until January 2021.

23.    Specifically, Daugherty worked in and around Merrillville, Indiana at the end of 2018; in and around Atlanta, Georgia in October 2019; in and around Louisville, Kentucky from November 2019 until January 2020; and the remainder of his employment in and around Champaign, Douglas, and Vermillion, Illinois.

24.    Throughout his employment, URG classified Daugherty as non-exempt and paid him on an hourly basis.

25.     Throughout his employment, URG subjected Daugherty to its uniform, illegal "ticket to ticket" policy, prohibiting him from clocking in for his shifts until he arrived at his first assigned ticket and requiring him to clock out when he left his last assigned ticket.

26.     But throughout his employment, URG required Daugherty to perform compensable work "off the clock" (without pay) before arriving to his first assigned ticket and after leaving his last assigned ticket.

27.     Further, throughout his employment, URG subjected Daugherty to its uniform, illegal meal break policy, requiring him to clock out for 30 minutes a day for so-called "meal breaks."

28.     But throughout his employment, Daugherty did not actually receive *bona fide* meal breaks.

29.     Daugherty brings this class and collective action on behalf of himself and other similarly situated hourly, non-exempt URG Utility Locators who are subject to URG's "ticket to ticket" and/or meal break policies.

30.     URG prohibits each of these Hourly Utility Locators from clocking in until they arrive at their first assigned ticket and requires them to clock out when they leave their last assigned ticket.

31.     But URG also requires each of these Hourly Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

32.     Likewise, URG requires each of these Hourly Utility Locators to clock out for 30 minutes a day for so-called "meal breaks."

33.     But these Hourly Utility Locators do not actually receive *bona fide* meal breaks.

34.     Thus, URG uniformly deprives these Hourly Utility Locators of overtime wages for all hours worked after 40 in a workweek, including those worked "off the clock," in violation of the FLSA, IMWL, and KWHA.

35.      Likewise, URG uniformly deprives these Hourly Utility Locators of earned wages (at their agreed hourly rates) for all hours worked, including those worked "off the clock," in violation of the IWPCA.

36.      The FLSA Collective of similarly situated employees is defined as:

> **All individuals who worked for URG as Hourly Utility Locators who were subject to URG's "ticket to ticket" policy and/or meal break policy at any time during the past 3 years ("FLSA Collective Members").**

37.      Daugherty also seeks to represent a class under the IMWL pursuant to FED. R. CIV. P. 23.

38.      The IMWL Class of similarly situated employees is defined as:

> **All individuals who worked for URG as Hourly Utility Locators in Illinois who were subject to URG's "ticket to ticket" policy and/or meal break policy at any time during the 3 years prior to the filing of this Complaint until final resolution of this action ("IMWL Class Members").**

39.      Daugherty also seeks to represent a class under the IWPCA pursuant to FED. R. CIV. P. 23.

40.      The IWPCA Class of similarly situated employees is defined as:

> **All individuals who worked for URG as Hourly Utility Locators in Illinois who were subject to URG's "ticket to ticket" policy and/or meal break policy at any time during the 10 years prior to the filing of this Complaint until final resolution of this action ("IWPCA Class Members").**

41.      Daugherty also seeks to represent a class under the KWHA pursuant to FED. R. CIV. P. 23.

42.      The KWHA Class of similarly situated employees is defined as:

> **All individuals who worked for URG as Hourly Utility Locators in Kentucky who were subject to URG's "ticket to ticket" policy and/or meal break policy at any time during the 5 years prior to the filing of this Complaint until final resolution of this action ("Kentucky Class Members").**

43.     The FLSA Collective Members, IMWL Class Members, IWPCA Class Members, and Kentucky Class Members are collectively referred to as the "Hourly Utility Locators."

44.     URG is a Michigan limited liability company headquartered in Troy, Michigan.

45.     URG may be served through its registered agent: **CT Corporation System, 208 South LaSalle Street, Suite 814, Chicago, Illinois 60604**.

**FLSA COVERAGE**

46.     At all relevant times, URG was an "employer" within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

47.     At all relevant times, URG was an "enterprise" within the meaning of Section 3(r) of the FLSA, 29 U.S.C. § 203(r).

48.     At all relevant times, URG was an "enterprise engaged in commerce or in the production of goods for commerce" within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because URG has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on good or materials—such as cellphones, computers, vehicles, tools, and personal protective equipment—that have been moved in or produced for commerce.

49.     At all relevant times, URG has had an annual gross volume of sales made or business done of not less than $1,000,000 each year.

50.     At all relevant times, Daugherty and the other Hourly Utility Locators were URG's covered "employees" within the meaning of Section 3(e) of the FLSA, 29 U.S.C. § 203(e).

51.     At all relevant times, Daugherty and the other Hourly Utility Locators were engaged in commerce or in the production of goods for commerce.

52.    Under its uniform "ticket to ticket" policy, URG prohibits Daugherty and the other Hourly Utility Locators from clocking in for their shifts until they arrive at their first assigned ticket and requires them to clock out for their shifts when they leave their last assigned ticket.

53.    But URG also requires Daugherty and the other Hourly Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

54.    As a result, URG fails to pay Daugherty and its other Hourly Utility Locators wages (including overtime) for the compensable work they perform "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

55.    URG's uniform "ticket to ticket" policy therefore violates the FLSA by depriving Daugherty and the other Hourly Utility Locators of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

56.    Further, under its uniform meal break policy, URG requires Daugherty and the other Hourly Utility Locators to clock out for 30-minutes a day for so-called "meal breaks," regardless of whether they actually receive a *bona fide* meal break.

57.    But URG also requires Daugherty and the other Hourly Utility Locators to perform compensable work "off the clock" during their unpaid "meal breaks."

58.    As a result, URG fails to pay Daugherty and its other Hourly Utility Locators wages (including overtime) for the compensable work they perform "off the clock" during their unpaid "meal breaks."

59.    URG's uniform meal break policy therefore violates the FLSA by depriving Daugherty and the other Hourly Utility Locators of overtime wages for all hours worked after 40 in a workweek. 29 U.S.C. § 207(a) & (e).

## FACTS

60.     URG bills itself as a "full-service utility contractor"[1] that provides "service solutions to utility providers and their customers … in Michigan, Illinois, Indiana, Ohio, Kentucky, Tennessee, Georgia, Minnesota, and Virginia."[2]

61.     To meet its business objectives, URG hires Hourly Utility Locators (including Daugherty and the other Hourly Utility Locators) to provide underground utility locating services to its clients.

62.     URG uniformly classifies Daugherty and its other Hourly Utility Locators as non-exempt and pays them on an hourly basis.

63.     Daugherty and the other Hourly Utility Locators regularly work more than 40 hours a workweek.

64.     But URG does not pay Daugherty and its other Hourly Utility Locators for all their hours worked.

65.     Instead, URG uniformly subjects Daugherty and its other Hourly Utility Locators to its illegal "ticket to ticket" and meal break policies and forces these employees to perform compensable work "off the clock" before and after clocking in and out for their shifts and during their unpaid "meal breaks."

66.     While exact job duties and precise locations may differ, Daugherty and the other Hourly Utility Locators are subject to URG's same or similar illegal policies—URG's "ticket to ticket" and/or meal break policies—for similar work.

67.     For example, Daugherty worked for URG as a Utility Locator in Illinois, Indiana, Kentucky, and Georgia from approximately January 2018 until January 2021.

---

[1] http://www.utilityresourcegroup.com/about-us.html (last visited December 13, 2023).
[2] http://www.utilityresourcegroup.com/index.html (last visited December 13, 2023).

68.     Daugherty was URG's hourly employee.

69.     Indeed, URG agreed to pay Daugherty approximately $21/hour (plus overtime for his hours worked over 40 in a workweek).

70.     As a Utility Locator, Daugherty's primary responsibilities included locating network lines for gas, electrical, cable, and communications companies (URG's clients) and identifying whether the utility owner's underground utilities conflict with proposed excavation locations.

71.     Throughout his employment, URG required Daugherty to report his work time to URG for approval through its uniform timekeeping and ticketing system.

72.     Throughout his employment, Daugherty regularly worked more than 40 hours a workweek.

73.     Indeed, Daugherty typically worked 10 to 12 hours a day for 5 to 6 days a workweek (or 50 to 72 hours a workweek) "on the clock."

74.     But throughout his employment, URG subjected Daugherty to its illegal "ticket to ticket" policy.

75.     Specifically, URG prohibited Daugherty from clocking in for his shifts until he arrived at his first assigned ticket and required him to clock out when he left his last assigned ticket.

76.     But URG also required Daugherty to perform compensable work "off the clock" (without pay) before arriving to his first assigned ticket and after leaving his last assigned ticket.

77.     Specifically, to meet URG's strict productivity requirements, Daugherty was forced to review tickets, route plan, make/take calls from URG's clients, perform mandatory vehicle inspections on his company-issued vehicle, load his utility locating equipment into his company-issued vehicle, attend round table meetings, drive to URG's facility to pick up necessary supplies, and/or drive to his first assigned ticket "off the clock" and without pay.

78.    Likewise, after clocking out upon completing his last assigned ticket, Daugherty was forced to drive to URG's facility to pick up/drop off necessary supplies, drive home, unload his utility locating equipment from his company-issued vehicle, perform mandatory vehicle inspections on his company-issued vehicle, review tickets, route plan, make/take calls from URG's clients, attend round table meetings, and/or respond to any emergencies "off the clock" and without pay.

79.    This pre- and post-ticket "off the clock" work took Daugherty approximately 1 to 2 hours a day (or 5 to 12 hours a workweek).

80.    But under URG's illegal "ticket to ticket" policy, URG did not pay Daugherty for his mandatory and necessary pre- and post-ticket "off the clock" work.

81.    Similarly, throughout his employment, URG subjected Daugherty to its illegal meal break policy.

82.    Specifically, URG required Daugherty to clock out for 30 minutes a day for so-called "meal breaks," regardless of whether he actually received a *bona fide* meal break.

83.    But Daugherty did not actually receive *bona fide* meal breaks.

84.    Instead, to complete his heavy workload in accordance with URG's strict productivity requirements, Daugherty was forced to perform his regular utility locating duties "off the clock" during his unpaid "meal breaks."

85.    So, rather than receiving overtime pay for all his hours worked over 40 in a workweek, under its illegal "ticket to ticket" and meal break policies, URG only paid Daugherty for the time he worked between his arrival at his first assigned ticket and his departure from his last assigned ticket, less his 30-minute on-duty "meal break," in violation of the FLSA, IMWL, and KWHA.

86.    Likewise, as a result of its illegal "ticket to ticket" and meal break policies, URG deprived Daugherty of earned wages (at his agreed hourly rate) for the compensable work he

performed "off the clock" during his on-duty "meal breaks," before he arrived at his first assigned ticket, and after he left his last assigned ticket in violation of the IWPCA.

87.    URG subjects its other Hourly Utility Locators according to the same illegal "ticket to ticket" and meal break policies it imposed on Daugherty.

88.    Like Daugherty, URG pays its other Hourly Utility Locators on an hourly basis.

89.    Like Daugherty, URG requires its other Hourly Utility Locators to report their hours worked to URG for approval via URG's uniform timekeeping and ticketing system.

90.    URG's records show that, like Daugherty, the other Hourly Utility Locators regularly work more than 40 hours a workweek.

91.    Indeed, like Daugherty, the other Hourly Utility Locators typically work 10 to 12 hours a day for 5 to 6 days a workweek (or 50 to 72 hours a workweek) "on the clock."

92.    URG uniformly subjects its other Hourly Utility Locators to the same policies, procedures, and strict operational and productivity requirements that it imposed on Daugherty.

93.    URG uniformly requires Daugherty and the other Hourly Utility Locators to complete their work tickets in a timely manner per URG's company-wide policy.

94.    URG uniformly pressures and expects Daugherty and the other Hourly Utility Locators to complete as many tickets as possible.

95.    And URG closely supervises and tracks Daugherty's and the other Hourly Utility Locators' productivity through its ticketing system to ensure they comply with URG's uniform expectations and complete their heavy workloads.

96.    In fact, URG installs GPS trackers on Daugherty's and the other Hourly Utility Locators' company-issued vehicles to monitor all their activities, movements, and locations to ensure they complete their heavy workloads in accordance with URG's strict productivity and operational requirements.

11

97.    But, like Daugherty, URG does not pay its other Hourly Utility Locators for all their hours worked.

98.    Instead, like Daugherty, the other Hourly Utility Locators are forced to perform compensable work "off the clock" during their "meal breaks" and before and after their shifts without pay to complete their heavy workloads in satisfaction of URG's strict productivity requirements.

99.    Indeed, URG subjects its other Hourly Utility Locators to its same illegal "ticket to ticket" policy that it imposed on Daugherty.

100.    Specifically, URG prohibits its Hourly Utility Locators (like Daugherty) from clocking in for their shifts until they arrive at their first assigned ticket and requires them to clock out for their shifts when they leave their last assigned ticket.

101.    But like Daugherty, URG also requires its other Hourly Utility Locators to perform compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

102.    The "off the clock" work Daugherty and the other Hourly Utility Locators perform before they arrive at their first assigned ticket and after they leave their last assigned ticket is similar if not the same.

103.    Specifically, before clocking in for their shifts, the other Hourly Utility Locators (like Daugherty) are forced to review tickets, route plan, make/take calls from URG's clients, perform mandatory vehicle inspections on their company-issued vehicles, load their utility locating equipment into their company-issued vehicle, attend round table meetings, drive to URG's facility to pick up necessary supplies, and/or drive to their first assigned ticket "off the clock" and without pay.

104.    Likewise, after clocking out for their shifts at their last assigned ticket, the other Hourly Utility Locators (like Daugherty) are forced to drive to URG's facility to pick up/drop off necessary supplies, drive home, unload their utility locating equipment from their company-issued vehicles,

perform mandatory vehicle inspections on their company-issued vehicles, review tickets, route plan, make/take calls from URG's clients, attend round table meetings, and/or respond to any emergencies "off the clock" and without pay.

105.    And like Daugherty, the other Hourly Utility Locators spend approximately 1 to 2 hours a day (or 5 to 12 hours a workweek) performing this compensable pre- and post-ticket work "off the clock" without pay.

106.    URG controls Daugherty's and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work, and this "off the clock" work is undertaken primarily for the benefit of URG's business of providing utility locating services to its clients.

107.    Further, this mandatory pre- and post-ticket "off the clock" work is necessary to the principal work Daugherty and the other Hourly Utility Locators perform as URG Hourly Utility Locators.

108.    Indeed, Daugherty and the other Hourly Utility Locators cannot provide utility locating services to URG's clients in accordance with URG's strict productivity and operational requirements unless they perform this pre- and post-ticket "off the clock" work.

109.    In other words, Daugherty's and the other Hourly Utility Locators' mandatory pre- and post-ticket "off the clock" work is a fundamental requirement of their jobs as URG Hourly Utility Locators.

110.    Indeed, URG could not eliminate this pre- and post-ticket "off the clock" work altogether without impairing Daugherty's and the other Hourly Utility Locators' ability to perform their utility locating work.

111.    Rather, this mandatory pre- and post-ticket "off the clock" work is integral and indispensable to Daugherty's and the other Hourly Utility Locators' work as URG Hourly Utility Locators.

112.    Thus, Daugherty and the other Hourly Utility Locators routinely perform this mandatory pre- and post-ticket "off the clock" work for URG's—not their own—predominant benefit.

113.    And URG knows Daugherty and its other Hourly Utility Locators perform this compensable pre- and post-ticket work "off the clock" because URG requires them to do so.

114.    In fact, URG closely monitors and tracks Daugherty and the other Hourly Utility Locators work time and locations via its company-wide ticketing system, GPS trackers, and/or dash cameras to ensure they meet URG's strict productivity requirements.

115.    Specifically, using timecard details and GPS data tracked by URG's uniform ticketing system, URG can easily determine whether Daugherty and the other Hourly Utility Locators are working "off the clock" before and after their shifts.

116.    Thus, URG management level employees can easily determine if Daugherty and the other Hourly Utility Locators are clocked out and if their vehicles are moving (and, therefore, they are working or traveling to and from tickets).

117.    And Daugherty and the other Hourly Utility Locators repeatedly complained to URG about being forced to work "off the clock" to complete their heavy workloads in satisfaction of URG's strict productivity and operational requirements.

118.    But URG fails to exercise its duty as Daugherty's and the other Hourly Utility Locators' employer to ensure these employees are not performing work that URG does not want performed "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

119.    Thus, URG requested, suffered, permitted, or allowed Daugherty and its other Hourly Utility Locators to work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket.

120. Despite accepting the benefits, URG does not pay Daugherty and its other Hourly Utility Locators for the time they spend performing this compensable work "off the clock."

121. Thus, under URG's illegal "ticket to ticket" policy, Daugherty and the other Hourly Utility Locators are denied overtime pay for the time they spend performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket during workweeks in which they work over 40 hours in willful violation of the FLSA, IMWL, and KWHA.

122. Likewise, under its illegal "ticket to ticket" policy, URG deprives Daugherty and the other Hourly Utility Locators of earned wages (at their agreed hourly rates) for the time they spend performing compensable work "off the clock" before they arrive at their first assigned ticket and after they leave their last assigned ticket in violation of the IWPCA.

123. In addition to depriving these employees of pay for time worked before they arrive at their first assigned ticket and after they leave their last assigned ticket, URG also subjects its other Hourly Utility Locators to the same illegal meal break policy it imposed on Daugherty.

124. Specifically, like Daugherty, URG requires its other Hourly Utility Locators to "clock out" for 30 minutes a day for so-called "meal breaks."

125. URG requires Daugherty and the other Hourly Utility Locators to "clock out" for 30 minutes a day regardless of whether they receive a full, uninterrupted meal break.

126. If Daugherty and the other Hourly Utility Locators do not "clock out" for 30 minutes a day to account for these so-called "meal breaks," URG will not approve their timesheets.

127. URG simply assumes Daugherty and the other Hourly Utility Locators receive *bona fide* meal breaks.

128. But Daugherty and the other Hourly Utility Locators do not actually receive *bona fide* meal breaks.

15

129. Instead, to complete their assigned heavy workloads in accordance with URG's uniform, strict operational and productivity requirements (and URG's close monitoring of the same), Daugherty and the other Hourly Utility Locators are forced to perform their regular utility locating duties and responsibilities "off the clock" during their unpaid "meal breaks."

130. Specifically, during their unpaid "meal breaks," Daugherty and other Hourly Utility Locators regularly perform work-related tasks, such as completing tickets, driving from one ticket to another, taking/making calls to URG's clients, and/or route planning.

131. The "off the clock" work Daugherty and the other Hourly Utility Locators perform during their "meal breaks" is similar if not the same.

132. Because of these constant work-related tasks, Daugherty and the other Hourly Utility Locators are not free to engage in personal activities during their unpaid "meal breaks."

133. Thus, Daugherty and the other Hourly Utility Locators routinely spend their unpaid "meal breaks" performing work "off the clock" for URG's—not their own—predominant benefit.

134. This unpaid "off the clock" work is compensable under the FLSA, IMWL, and KWHA because URG knew, or should have known, that: (1) Daugherty and the other Hourly Utility Locators were performing unpaid work during their "off the clock" meal breaks; (2) they were interrupted or subject to interruptions with work duties during any attempted meal break; (3) they were not completely relieved of all duties during their meal breaks; (4) they entirely skipped their meal breaks due to work demands; (5) their meal breaks were less than 20 consecutive minutes; (6) they were not free to engage in personal activities during their meal break because of constant interruptions; and/or (7) they spent their unpaid meal breaks performing their regular utility locating duties for URG's predominant benefit.

135. This unpaid "off the clock" work is also compensable under the IWPCA because URG agreed to pay Daugherty and the other Hourly Utility Locators set hourly rates of pay for all hours of

work they performed, and URG failed to pay them for their hours worked "off the clock" during their on-duty "meal breaks."

136.    URG fails to exercise its duty as Daugherty's and the other Hourly Utility Locators' employer to ensure they are not performing work that URG does not want performed "off the clock" during their unpaid "meal breaks."

137.    And URG knows Daugherty and the other Hourly Utility Locators regularly work "off the clock" during their unpaid "meal breaks."

138.    Specifically, using timecard details and GPS data tracked by URG's uniform ticketing system, URG can easily determine whether Daugherty and the other Hourly Utility Locators are working "off the clock" during their unpaid "meal breaks."

139.    Thus, URG management level employees can easily determine if Daugherty and the other Hourly Utility Locators are clocked out for lunch and/or if their vehicles are moving (and, therefore, they are working or traveling between tickets).

140.    Despite accepting the benefits, URG does not pay Daugherty and its other Hourly Utility Locators for the compensable work they perform "off the clock" during their unpaid "meal breaks."

141.    Thus, under URG's illegal meal break policy, Daugherty and the other Hourly Utility Locators are denied overtime pay for their on-duty "meal breaks" during workweeks in which they work over 40 hours in willful violation of the FLSA, IMWL and KWHA.

142.    Likewise, under URG's illegal meal break policy, Daugherty and the other Hourly Utility Locators are denied earned wages (at their agreed hourly rates) for their on-duty meal breaks in violation of the IWPCA.

### CLASS & COLLECTIVE ACTION ALLEGATIONS

143.    Daugherty incorporates all other paragraphs by reference.

144.    Like Daugherty, the other Hourly Utility Locators were victimized by URG's illegal "ticket to ticket" and meal break policies.

145.    Other Hourly Utility Locators worked with Daugherty and indicated they were paid in the same manner, performed similar work, and were subject to URG's same illegal "ticket to ticket" and meal break policies.

146.    Based on his experience with URG, Daugherty is aware URG's illegal "ticket to ticket" and meal break policies were imposed on the other Hourly Utility Locators.

147.    The Hourly Utility Locators are similarly situated in the most relevant respects.

148.    Even if their specific job titles or precise locations might vary, these differences do not matter for the purpose of determining their entitlement to earned wages for all hours worked and overtime pay for all hours worked over 40 in a workweek.

149.    Therefore, the specific job titles or precise job locations of the various Hourly Utility Locators do not prevent class or collective treatment.

150.    Rather, the Hourly Utility Locators are held together by URG's uniform, illegal "ticket to ticket" and meal break policies, which systematically deprived Daugherty and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek.

151.    URG's failure to pay earned wages and overtime wages as required by the FLSA and analogous state wage and hour laws results from generally applicable, systematic policies and practices which are not dependent on the personal circumstances of the Hourly Utility Locators.

152.    URG's records reflect the number of hours the Hourly Utility Locators recorded they worked each workweek.

153.    URG's records also show the number of hours the Hourly Utility Locators *actually* worked each workweek.

154.    And URG's records further show it required the Hourly Utility Locators to clock out for 30 minutes a day for so-called "meal breaks."

155.    The back wages owed to Daugherty and the other Hourly Utility Locators can therefore be calculated using the same formula applied to the same records.

156.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to URG's records, and there is no detraction from the common nucleus of liability facts.

157.    Therefore, the issue of damages does not preclude class or collective treatment.

158.    Daugherty's experiences are therefore typical of the experiences of the other Hourly Utility Locators.

159.    Daugherty has no interest contrary to, or in conflict with, the other Hourly Utility Locators that would preclude class or collective treatment.

160.    Like each Hourly Utility Locator, Daugherty has an interest in obtaining the unpaid wages owed to them under federal, Illinois, and Kentucky law.

161.    Daugherty and his counsel will fairly and adequately protect the interests of the other Hourly Utility Locators.

162.    Daugherty retained counsel with significant experience in handling complex class and collective action litigations.

163.    A class and collective action is superior to other available means for fair and efficient adjudication of this lawsuit.

164.    Absent this class and collective action, many Hourly Utility Locators likely will not obtain redress for their injuries, and URG will reap the unjust benefits of violating the FLSA and analogous state wage and hour laws.

165.    Further, even if some of the Hourly Utility Locators could afford individual litigation against URG, it would be unduly burdensome to the judicial system.

166.    Indeed, the multiplicity of actions would create a hardship to the Hourly Utility Locators, the Court, and URG.

167.    Conversely, concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Hourly Utility Locators' claims.

168.    The questions of law and fact that are common to each Hourly Utility Locator predominate over any questions affecting solely the individual members.

169.    Among the common questions of law and fact are:

a.      Whether URG engaged in a policy and practice of prohibiting its Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket;

b.      Whether URG engaged in a policy and practice of requiring its Hourly Utility Locators to clock out for their shifts once they left their last assigned ticket;

c.      Whether URG engaged in a policy and practice of requiring its Hourly Utility Locators to clock out for 30 minutes a day for "meal breaks," regardless of whether they actually received a *bona fide*, uninterrupted meal break;

d.      Whether URG knew, or had reason to know, the Hourly Utility Locators were requested, suffered, permitted, or allowed to work "off the clock" during their unpaid "meal breaks" and/or before they arrived at their first assigned ticket and after they left their last assigned ticket;

e.      Whether URG failed to pay its Hourly Utility Locators overtime wages for all overtime hours worked, including those worked "off the clock," in violation of the FLSA, IMWL, and KWHA;

f.      Whether URG failed to pay its Hourly Utility Locators earned wages (at their agreed hourly rates) for all hours worked, including those worked "off the clock," in violation of the IWPCA;

g.      Whether URG's decision not to pay the Hourly Utility Locators overtime wages for all overtime hours worked, including those worked "off the clock," was made in good faith;

h.      Whether URG's decision to not pay the Hourly Utility Locators all their earned wages (at their agreed hourly rates) for all hours worked, including those worked "off the clock," was made in good faith; and

i.      Whether URG's violations were willful.

170.    Daugherty knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

171.    As part of its regular business practices, URG intentionally, willfully, and repeatedly violated the FLSA, IMWL, IWPCA, and KWHA with respect to Daugherty and the other Hourly Utility Locators.

172.    URG's illegal "ticket to ticket" and meal break policies deprived Daugherty and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek, which they are owed under federal, Illinois, and Kentucky law.

173.    There are many similarly situated Hourly Utility Locators who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

174.    The Hourly Utility Locators are known to URG and can be readily identified through URG's business and personnel records.

## URG'S VIOLATIONS WERE WILLFUL AND/OR DONE IN
## RECKLESS DISREGARD OF THE FLSA, IMWL, IWPCA, AND KWHA

175.    Daugherty incorporates all other paragraphs by reference.

176.    URG knew it was subject to the FLSA's, IMWL's, and KWHA's respective overtime provisions.

177.    URG knew the FLSA, IMWL, and KWHA required it to pay non-exempt employees, including Daugherty and the other Hourly Utility Locators, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek.

178.    URG also knew it was subject to the IWPCA.

179.    URG also knew the IWPCA required it to pay employees, including Daugherty and the other Hourly Utility Locators, all wages earned (at the rates URG agreed to pay them) for all hours of work performed.

180.    URG knew Daugherty and the other Hourly Utility Locators were non-exempt employees entitled to overtime pay.

181.    URG knew it paid Daugherty and the other Hourly Utility Locators on an hourly basis.

182.    URG knew Daugherty and each Hourly Utility Locators worked over 40 hours in at least one workweek during relevant period(s) because URG required them to record their hours worked using its timeclock system.

183.    URG knew the FLSA, IMWL, IWPCA, and KWHA required it to pay employees, including Daugherty and the other Hourly Utility Locators, for all hours they performed compensable work.

184.    URG knew that, as Daugherty's and the other Hourly Utility Locators' employer, it had a duty to ensure they were not performing work "off the clock" (without pay) that URG did not want performed.

185.    URG knew it prohibited Daugherty and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket.

186.    Nonetheless, URG knew Daugherty and the other Hourly Utility Locators performed compensable work "off the clock" before they arrived at their first assigned ticket.

187.    Likewise, URG knew it required Daugherty and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket.

188.    Nonetheless, URG knew Daugherty and the other Hourly Utility Locators performed compensable work "off the clock" after they left their last assigned ticket.

189.    Thus, URG knew it requested, suffered, permitted, or allowed Daugherty and the other Hourly Utility Locators to work "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket.

190.    URG knew it controlled Daugherty's and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work.

191.    URG knew Daugherty's and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work was undertaken for URG's predominant benefit.

192.    URG knew Daugherty's and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work was necessary to the principal work they performed as URG Hourly Utility Locators.

193.    URG knew Daugherty's and the other Hourly Utility Locators' pre- and post-ticket "off the clock" work was integral and indispensable to their work as URG Hourly Utility Locators.

194.    Thus, URG knew, should have known, or recklessly disregarded whether Daugherty and the other Hourly Utility Locators performed compensable work "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket.

195.    Nonetheless, URG did not pay Daugherty and the other Hourly Utility Locators for the compensable work they performed "off the clock" before they arrived at their first assigned ticket and after they left their last assigned ticket.

196.    URG also knew it required Daugherty and the other Hourly Utility Locators to clock out for 30 minutes a day for so-called "meal breaks."

197.    URG knew Daugherty and the other Hourly Utility Locators did not actually receive *bona fide* meal breaks.

198.    URG knew Daugherty and the other Hourly Utility Locators regularly spent their "meal breaks" performing their regular utility locating duties "off the clock" for URG's predominant benefit.

199.    Thus, URG knew it requested, suffered, permitted, or allowed Daugherty and the other Hourly Utility Locators to work "off the clock" during their "meal breaks."

200.    In other words, URG knew, should have known, or recklessly disregarded whether Daugherty and the other Hourly Utility Locators performed compensable work "off the clock" during their "meal breaks."

201.    Nonetheless, URG did not pay Daugherty and the other Hourly Utility Locators for the work they performed "off the clock" during their "meal breaks."

202.    Thus, URG knew, should have known, or recklessly disregarded whether it failed to pay Daugherty and the other Hourly Utility Locators for all the hours they performed compensable work.

203.    URG's decision to prohibit Daugherty and the other Hourly Utility Locators from clocking in for their shifts until they arrived at their first assigned ticket was neither reasonable, nor was it made in good faith.

204.    URG's decision to require Daugherty and the other Hourly Utility Locators to clock out for their shifts when they left their last assigned ticket was neither reasonable, nor was it made in good faith.

205.    URG's decision to require Daugherty and the other Hourly Utility Locators to clock out for 30 minutes a day to account for "meal breaks" regardless of whether they actually received *bona fide* meal breaks was neither reasonable, nor was it made in good faith.

206.    URG's failure to pay Daugherty and the other Hourly Utility Locators overtime wages for all overtime hours worked was neither reasonable, nor was its decision not to pay these employees overtime wages for all overtime hours worked made in good faith.

207.    Likewise, URG's failure to pay Daugherty and the other Hourly Utility Locators all their earned wages (at their agreed hourly rates) for all hours worked was neither reasonable, nor was its decision not to pay these employees all their earned wages (at their agreed hourly rates) for all hours worked made in good faith.

208.    URG knowingly, willfully, and/or in reckless disregard carried out its illegal "ticket to ticket" and meal break policies that deprived Daugherty and the other Hourly Utility Locators of earned wages for all hours worked and overtime wages for all hours worked after 40 in a workweek in violation of the FLSA, IMWL, IWPCA, and KWHA.

209.    URG knew, should have known, or recklessly disregarded whether its conduct described in this Complaint violated the FLSA, IMWL, IWPCA, and KWHA.

## COUNT I

### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### (FLSA COLLECTIVE)

210.    Daugherty incorporates all other paragraphs by reference.

211.    Daugherty brings his FLSA claims on behalf of himself and the other FLSA Collective Members pursuant to 29 U.S.C. § 216(b).

212.    URG violated, and is violating, the FLSA by employing non-exempt employees (Daugherty and the other FLSA Collective Members) in a covered enterprise for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including hours worked "off the clock" during their "meal breaks" and/or before they arrived at their first assigned ticket and after they left their last assigned ticket.

213.    URG's unlawful conduct harmed Daugherty and the other FLSA Collective Members by depriving them of the overtime wages they are owed.

214.    Accordingly, URG owes Daugherty and the other FLSA Collective Members the difference between the overtime wages actually paid and the proper overtime wages actually earned.

215.    Because URG knew, or showed reckless disregard for whether, its policies violated the FLSA, URG owes these wages for at least the past 3 years.

216.    URG is also liable to Daugherty and the other FLSA Collective Members for an additional amount equal to all unpaid wages as liquidated damages.

217.    Finally, Daugherty and the other FLSA Collective Members are entitled to recover all reasonable attorneys' fees and costs incurred in this action.

## COUNT II

### FAILURE TO PAY OVERTIME WAGES UNDER THE IMWL
### (IMWL CLASS)

218.    Daugherty incorporates all other paragraphs by reference.

219.    Daugherty brings his IMWL overtime claim on behalf of himself and the other IMWL Class Members pursuant to FED. R. CIV. P. 23.

220.    URG's conduct violates the IMWL (820 ILCS 105/1, *et seq*.).

221.    At all relevant times, URG was subject to the IMWL because URG was (and is) an "employer" within the meaning of the IMWL. 820 ILCS 105/3(c)

222.    At all relevant times, URG employed Daugherty and the other IMWL Class Members as its covered "employees" within the meaning of the IMWL. 820 ILCS 105/3(d).

223.    The IMWL requires employers, like URG, to pay non-exempt employees, including Daugherty and the other IMWL Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek. 820 ILCS 105/4a.

224.    Daugherty and the other IMWL Class Members are entitled to overtime wages under the IMWL.

225.    URG violated, and is violating, the IMWL by failing to pay Daugherty and the other IMWL Class Members overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including hours worked "off the clock" during their "meal breaks" and/or before they arrived at their first assigned ticket and after they left their last assigned ticket. *See* 820 ILCS 105/4a.

226.    URG's unlawful conduct harmed Daugherty and the other IMWL Class Members by depriving them of the premium overtime wages they are owed for at least the last three years.

227.    Accordingly, URG owes Daugherty and the other IMWL Class Members the difference between the overtime wages actually paid and the proper overtime wages actually earned, treble damages, as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 105/12(a).

## COUNT III

### FAILURE TO PAY ALL WAGES UNDER THE IWPCA
### (IWPCA CLASS)

228.    Daugherty incorporates all other paragraphs by reference.

229.    Daugherty brings his IWPCA claim on behalf of himself and the other IWPCA Class Members pursuant to FED. R. CIV. P. 23.

230.    URG's conduct violates the IWPCA (820 ILCS 115/1, *et seq.*).

231.    At all relevant times, URG was subject to the IWPCA because URG was (and is) an "employer" within the meaning of the IWPCA.

232.    At all relevant times, URG employed Daugherty and the other IWPCA Class Members as its covered "employees" within the meaning of the IWPCA.

233.    The IWPCA requires employers, like URG, to pay employees, including Daugherty and the other IWPCA Class Members, for all the hours they work at the rate(s) agreed to by the parties.

234.    During the course of their employment, URG agreed to pay Daugherty and each IWPCA Class Member an hourly rate for all the hours of work they performed.

235.    Daugherty and each IWPCA Class Member accepted URG's offer.

236.    But during the course of their employment, URG failed to pay Daugherty and the other IWPCA Class Members for all the time they worked at the rates URG agreed to pay them because URG failed to include the time they worked "off the clock" during their "meal breaks" and/or before they arrived at their first assigned ticket and after they left their last assigned ticket in their total hours worked in a given workweek.

237.    Thus, URG violated, and is violating, the IWPCA by failing to pay Daugherty and the other IWPCA Class Members all their earned wages (at the rates URG agreed to pay them) for all the hours of work they performed for URG's benefit.

238.    URG's unlawful conduct harmed Daugherty and the other IWPCA Class Members by depriving them of the earned wages they are owed for at least the last 10 years.

239.    Accordingly, URG owes Daugherty and the other IWPCA Class Members their unpaid earned wages (at their agreed hourly rates), as well as monthly statutory damages on these amounts at the highest applicable rates, plus attorneys' fees, costs, and expenses. *See* 820 ILCS 115/14(a).

## COUNT IV

### FAILURE TO PAY OVERTIME WAGES UNDER THE KWHA
### (KENTUCKY CLASS)

240.    Daugherty incorporates all other paragraphs by reference.

241.    Daugherty brings his KWHA claim on behalf of himself and the other Kentucky Class Members pursuant to FED. R. CIV. P. 23.

242.    URG's conduct violates the KWHA (K.R.S. §§ 331.010, *et seq.*).

243.    At all relevant times, URG was subject to the KWHA because URG was (and is) an "employer" within the meaning of the KWHA. K.R.S. § 337.010(1)(d).

244.    At all relevant times, URG employed Daugherty and the other Kentucky Class Members as its covered "employees" within the meaning of the KWHA. K.R.S. § 337.010(1)(e).

245.    The KWHA requires employers, like URG, to pay non-exempt employees, like Daugherty and the other Kentucky Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked over 40 in a workweek. K.R.S. § 337.285.

246.    Daugherty and the other Kentucky Class Members are entitled to overtime wages under the KWHA.

247.    URG violated, and is violating, the KWHA by employing non-exempt employees (Daugherty and the other Kentucky Class Members) for workweeks longer than 40 hours without paying such employees overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 40 in a workweek, including hours worked "off the clock" during their "meal

breaks" and/or before they arrived at their first assigned ticket and after they left their last assigned ticket. *See* K.R.S. § 337.285.

248.    URG's unlawful conduct harmed Daugherty and the other Kentucky Class Members by depriving them of the overtime wages they are owed.

249.    Accordingly, URG owes Daugherty and the other Kentucky Class Members the difference between the overtime wages actually paid and the proper overtime wages actually earned for at least the last five years. *See* K.R.S. § 337.385(1).

250.    In violating the KWHA, URG acted willfully, without a good faith basis, and with reckless disregard of clearly applicable Kentucky law.

251.    Thus, URG is also liable to Daugherty and the other Kentucky Class Members for an additional amount equal to all unpaid wages as liquidated damages. *See* K.R.S. § 337.385(1).

252.    Finally, Daugherty and the other Kentucky Class Members are entitled to recover all reasonable attorneys' fees, costs, and expenses incurred in this action. *See* K.R.S. § 337.385(1).

## JURY DEMAND

253.    Daugherty demands a trial by jury on all Counts.

## RELIEF SOUGHT

WHEREFORE, Daugherty, individually and on behalf of the other Hourly Utility Locators, seeks the following relief:

      a.    An Order designating this lawsuit as a collective action and authorizing notice to the FLSA Collective Members allowing them to join this action by filing a written notice of consent;

      b.    An Order certifying a class action pursuant to FED. R. CIV. P. 23;

      c.    An Order appointing Daugherty and his counsel to represent the interests of the Hourly Utility Locators;

d.      An Order finding URG liable to Daugherty and the other FLSA Collective Members for all unpaid overtime wages owed under the FLSA, plus liquidated damages in an amount equal to their unpaid wages;

e.      An Order finding URG liable to Daugherty and the other IMWL Class Members for all their unpaid overtime wages owed under the IMWL, treble damages, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

f.      An Order finding URG liable to Daugherty and the other IWPCA Class Members for all their unpaid earned wages owed under the IWPCA, as well as monthly statutory damages at the rate of 5% per month in the amount of the underpayment;

g.      An Order finding URG liable to Daugherty and the other Kentucky Class Members for all unpaid overtime wages owed under the KWHA, plus liquidated damages in an amount equal to their unpaid wages;

h.      Judgment awarding Daugherty and the other Hourly Utility Locators all unpaid earned wages, unpaid overtime wages, liquidated damages, treble damages, statutory damages, and any other penalties available under the FLSA, IMWL, IWPCA, and KWHA;

i.      An Order awarding attorneys' fees, costs, and expenses;

j.      Pre- and post-judgment interest at the highest applicable rates; and

k.      Such other and further relief as may be necessary and appropriate.

Dated: December 14, 2023.

Respectfully submitted,

**WERMAN SALAS P.C.**

By: */s/ Maureen A. Salas*
  Douglas M. Werman
  Maureen A. Salas
  77 W. Washington St., Ste 1402
  Chicago, Illinois 60602
  Phone: (312) 419-1008
  Fax:    (312) 419-1025
  dwerman@flsalaw.com
  msalas@flsalaw.com

  Michael A. Josephson*
  Andrew W. Dunlap*
  **JOSEPHSON DUNLAP, LLP**
  11 Greenway Plaza, Suite 3050
  Houston, Texas 77046
  Phone: (713) 352-1100
  Fax:    (713) 352-3300
  mjosephson@mybackwages.com
  adunlap@mybackwages.com

  Richard J. (Rex) Burch*
  **BRUCKNER BURCH, PLLC**
  11 Greenway Plaza, Suite 3025
  Houston, Texas 77046
  Phone: (713) 877-8788
  Fax:    (713) 877-8065
  rburch@brucknerburch.com

  *Pro hac vice applications forthcoming*

  **ATTORNEYS FOR DAUGHERTY &
  THE HOURLY UTILITY LOCATORS**